IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

RECEIVED
AUG 2 5 2008
AUG 25 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

United States of America ex rel.

__Bobby S. Luga R-25652__
(Full name and prison number)
(Include name under which convicted)

PETITIONER

vs.

__Brian McCann, Warden, Stateville Correctional Center__
(Warden, Superintendent, or authorized person having custody of petitioner)

RESPONDENT, and

(Fill in the following blank **only** if judgment attacked imposes a sentence to commence in the future)

ATTORNEY GENERAL OF THE STATE OF

__Illinois__
(State where judgment entered)

CASE NO: _____
(Supplied by Clerk of this Court)

08CV4841
JUDGE GUZMAN
MAG. JUDGE DENLOW

Case Number of State Court Conviction:

__03CF1435__

PETITION FOR WRIT OF HABEAS CORPUS – PERSON IN STATE CUSTODY

1. Name and location of court where conviction entered: __Circuit Court For The Nineteenth Judicial District, Lake County, Illinois.__

2. Date of judgment of conviction: __August 28th, 2003__

3. Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)
   __Attempted First Degree Murder Accompanied By Brutally Heinous Behavior Indicative of Wanton Cruelty of 03CF1435__

4. Sentence(s) imposed: __34 years at 85%__

5. What was your plea? (Check one)
   (A) Not guilty    (✓)
   (B) Guilty        ( )
   (C) Nolo contendere ( )

   If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:

   _____

## PART I -- TRIAL AND DIRECT REVIEW

1. Kind of trial: (Check one):    Jury (✓)    Judge only ( )
2. Did you testify at trial?   YES ( )    NO (✓)
3. Did you appeal from the conviction or the sentence imposed? YES (✓)   NO ( )

   (A) If you appealed, give the

   (1) Name of court: Appellate Court of Illinois Second Judicial District
   (2) Result: Denied in Part, Corrected in Part
   (3) Date of ruling: December 23rd, 2005
   (4) Issues raised: Instructional error, abuse of discretion during sentencing, and erroneous mittimus.

   (B) If you did not appeal, explain briefly why not: _____

4. Did you appeal, or seek leave to appeal, to the highest state court?   YES (✓)   NO ( )

   (A) If yes, give the

   (1) Result  Denied
   (2) Date of ruling: November 29th, 2006
   (3) Issues raised: Instructional error, and ineffective counsel.

   (B) If no, why not: _____

5. Did you petition the United States Supreme Court for a writ of *certiorari*?  Yes ( )   No (✓)

   If yes, give (A) date of petition: _____   (B) date *certiorari* was denied: _____

2

## PART II – COLLATERAL PROCEEDINGS

1. With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

   YES (✓)   NO ( )

   With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

   A. Name of court: Nineteenth Judicial Circuit, Lake County, Illinois

   B. Date of filing: June 1st, 2007

   C. Issues raised: Ineffective assistance of trial counsel, prosecutorial vindictiveness, and ineffective assistance of appellate counsel.

   D. Did you receive an evidentiary hearing on your petition?   YES ( )   NO (✓)

   E. What was the court's ruling? Summarily dismissed.

   F. Date of court's ruling: August 24th, 2007

   G. Did you appeal from the ruling on your petition?   YES ( )   NO (✓)

   H. (a) If yes,   (1) what was the result? _____

   (2) date of decision: _____

   (b) If no, explain briefly why not: Deadline missed due to lockdowns, and also inability to access law materials.

   I. Did you appeal, or seek leave to appeal this decision to the highest state court?

   YES ( )   NO ( )

   (a) If yes,   (1) what was the result? _____

   (2) date of decision: _____

   (b) If no, explain briefly why not: _____

3

2. With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?    YES ( )    NO (✓)

    A. If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

        1. Nature of proceeding  _____

        2. Date petition filed  _____

        3. Ruling on the petition  _____

        3. Date of ruling  _____

        4. If you appealed, what was the ruling on appeal?  _____

        5. Date of ruling on appeal  _____

        6. If there was a further appeal, what was the ruling ?  _____

        7. Date of ruling on appeal  _____

3. With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**?    YES ( )    NO (✓)

    A. If yes, give name of court, case title and case number: _____

    B. Did the court rule on your petition? If so, state

        (1) Ruling: _____

        (2) Date: _____

**4. WITH RESPECT TO THIS CONVICTION OR SENTENCE, ARE THERE LEGAL PROCEEDINGS PENDING IN ANY COURT, OTHER THAN THIS PETITION?**

YES ( )    NO (✓)

If yes, explain: _____

4

13A. <u>FIRST GROUND</u>

1. The defendant is entitled to a new trial because the charge to the jury included conflicting instructions on the application of the principle of accountability to the offense of aggravated battery, which effectively removed from the Jury's consideration the option of convicting Mr. Luga of this lesser included offense of attempted first degree murder. Moreover, the confusion generated by other instructional errors makes the guilty verdict unreliable.

The Defendant contends that the giving of conflicting instructions concerning the required elements of the lesser offense of aggravated battery requires a new trial for the crime of attempted first degree murder. In the charge to the jury, the trial court erroneously gave an issue instruction refused at the instruction conference omitting accountability language. This portion of the charge directly conflicted with the correct issues instruction containing the principle of accountability. As discussed below, these inconsistent instructions had the effect of removing from the jury's consideration the defense asserted at trial, which urged the entry of a conviction of the lesser included offense of aggravated battery.

Although the customary standard of review pertaining to the giving or refusal of jury instructions considers whether the trial court abused it's discretion (**People v. Nicholas**, 351 Ill App.3d 433, 445 (1st Dist., 2004)), the reviewing courts have adopted a different approach when the defense claims plain error due to conflicting instructions defining the elements of

5

crimes. In these situations, the Appellate Court must determine whether some fundamental error in the instructions denied the accused a fair trial. In the alternative, the existence of plain error can be based on a finding that the evidence presented at trial was closely balanced. **People v. Avers,** 331 Ill.App.3d 742,749 (1st Dist., 2002) Thus, in order to determine whether to apply the plain error rule, this Court must review the record on a *de novo* basis.

Although defense counsel failed to notice the giving of inconsistent instructions during the charge to the jury, and did not include such a claim in the post-trial motion, Mr. Luga contends that the plain error rule should apply here. Since the Defendant's mental state was the only contested issue at trial, inconsistent instructions that misled the jury on the elements required to prove aggravated battery resulted in fundamental error undermining the reliability of the jury's verdict. As a result, this Court should relax the rule of waiver and consider the underlying claim of instructional error. **People v. Jenkins**, 69 Ill.2d 61, 66 (1977)

A second reason compels relaxation of the rule of waiver here. As discussed below, the trial court gave the jury an instruction that was actually refused at the instruction conference. (R. C92; R. 633-635, 707-708) In contrast to the typical claim of waiver, the court had already ruled on the instructions submitted by the parties. The defense had every reason to expect that the charge to the jury would conform to the ruling at the instructions conference. As the court read the charge to the jury,

defense counsel could not have anticipated the giving of a previously refused instruction.

In determining whether grave error has occurred in giving instructions, reviewing courts consider the **possibility** of jury confusion on essential elements of the crime, not the **certainty** of a mistaken verdict. Thus, plain error occurred in the following cases where erroneous instructions **could have confused** jurors or misled them concerning the required mental state required for conviction. **People v. Alvin**, 173 Ill.2d 273, 287 (1996); **People v. Haywood**, 82 Ill.2d 540, 544 (1980); **People v. Jenkins**, 69 Ill.2d 61, 66 (1977) In **Jenkins,** the Supreme Court explained that when a trial court gives directly contradictory jury instructions, the jury cannot perform it's constitutional function. In this type of situation, giving another instruction that correctly defines the element of the offense cannot render the error harmless. Also see **People v. Bush**, 157Ill.2d 248, 254 (1992) and **People v. Hayworrd, supra.**

In the present case, the trial court acceded to the defense request to give the jury instructions permitting a verdict of guilty of the crime of aggravated battery. Thus, the court followed existing case laws that aggravated battery is a lesser included crime of attempted first degree murder. **People ex rel. Walker v. Pate,** 53 Ill.2d 485, 589 (1973); **People v. Jenkins**, 41Ill.App.3d 392, 393 (1st Dist., 1976) In closing argument, defense counsel urged the jury to find his client guilty of aggravated battery due to the State's inability to prove that he acted with the intent to kill Mr. Baltier. Counsel noted the absence of evidence of any agreement

between Mr. Lug and Kelleher to attach or rob the victim. He emphasized that Kelleher was the main perpetrator because he robbed Manny of his money. The fact that the two men did not kill Baltier, though he was completely defenseless, also suggested the absence of this mort serious of all criminal mental states. The defense attorney requested the return of a verdict finding Mr. Luga guilty of aggravated battery. (R. 672-689)

Despite the serious injuries inflicted on Mr. Baltier, a verdict that Mr. Luga acted with a less culpable mental state than intent to kill would have been fully supported by existing case law. The Appellate Court has acknowledged that the use of a deadly weapon, such as a firearm or a knife, always invokes an inference of an intent to kill, while the use of the attacker's hands does not necessarily permit this inference. **People v. Scott**, 271 Ill.App.3d 307, 310 (1st Dist., 1994) Even the use of a baseball bat to inflict serious injuries is not considered conclusive proof o an intent to kill. **People v. Deason**, 223 Ill.App.3d 320, 326 (4th Dist., 1991)

However, the trial court's inherently contradictory issues instructions for the lesser included offense of aggravated battery effectively removed this option from the jury's consideration. Although each of the propositions contained in the issues instructions for attempted first degree murder included accountability language (R. C123, C125; R. 708-710), the two issues instructions for the lesser offense omitted this language and also contradicted one another. Thus, one of the aggravated battery instructions permitted the jury to consider the mental state of Kelleher based on principles of accountability (R. C88; R. 705),

while the erroneously given instruction refused at the instruction conference required the jury to focus only on the Defendant's mental state by omitting accountability language. (R. C92; R. 707-708) Though a reasonable jury may have chosen one or the other of these instructions to follow, it might also have abandoned the hopeless effort to sort out the confusion. The jurors could have realized that the instructions were inherently contradictory and incapable of resolution. Then, instead of retaining the option to decide whether Mr. Luga knowingly inflicted great bodily harm on the victim, the jury would have been left with the wholly unsatisfactory choice between acquitting him and returning a guilty verdict of attempted first degree murder. In this scenario, the Defendant's admissions that he participated in the beating would have made a not guilty verdict an unacceptable option.

Alternatively, the jury might have focused on the instruction that omitted the accountability option in proving aggravated battery. Under this scenario, the jury would be required to decide whether Mr. Luga's sole acts of striking Baltier demonstrated his knowledge that great bodily harm would result to Manny. But, since the evidence did no neatly sort out the respective blows inflicted by the two men, a rational jury could reject the aggravated battery verdict in the absence of an accountability option because of it's uncertainty regarding Mr. Luga's precise actions. Thus the return of the guilty verdict based on a more serious mental state would not necessarily indicate that the jury was convinced of the intent to kill, but

that it was the only acceptable verdict gives the unavailability of the accountability principle for aggravated battery.

The case under review resembles the situation presented in **People v. Wells**, 110 Il.App3d 700, 705 (5th Dist., 1982). In **Wells**, the court correctly informed the jury of the State's burden to negate a self-defense claim with respect to the offense of murder. However, the Appellate court found that the absence of this requirement from the issues instructions for involuntary manslaughter and armed violence may have prompted guilty verdicts fro those less serious charges, despite an acquittal of murder. Similarly, Mr. Luga's prosecution, while the instructions pertaining to attempted first degree murder correctly referred to the principle of accountability, the conflicting directions with respect to the crime of aggravated battery might have prompted the jury to reject this option and convict of the more serious offense.

Furthermore, Illinois cases have not always required strict inconsistency between instructions to justify a finding of plain error. For example, in **People v. Alvine**, 173 Ill.2d 273, 287 (1996), the Supreme Court vacated a murder conviction where abbreviated parenthetical references to the alternative means of proving murder could have prompted the jury to ignore the State's requirement to prove the mental state for the crime. The high court vacated the conviction due to this confusion in the instructions despite it's acknowledgement that they were not facially conflicting.

In the present case, the conflict between the issues instructions for aggravated battery and their conflict with the attempted first degree murder instructions was no the sole source of confusion. At the conclusion of the initial charge to the jury, the court informed the attorneys that the various issues instructions failed to contain the conjunction "and" between the propositions comprising the elements of the offense. This omission creates an ambiguity as to whether the State was required to prove all these propositions or only some of them. (R. C88, C92, C123, C125; R. 705, 707-710) Further, the definition of aggravated battery omitted the requirement of proving the element of "great" bodily harm. (R. C96; R. 710) The State called the court's attention to the incorrect phrasing of the prosecution burden to prove "these propositions" beyond a reasonable doubt for a conviction of attempted first degree murder, rather than the correct formula to prove "each one of these propositions" by the required standard. The court directed counsel to re-type the instructions and then recalled the jury to read them the corrected instructions. (R. 713 (b)-(d)

In addition, when informing the jurors of the elements of aggravated battery, the court read an instruction not given at the instruction conference and verbally failed to advise them of the required knowing mental state. (R. C88, C127; R. 633-635, 705) Moreover, the definition of self-defense provided to the jury had been refused at the instruction conference and it omitted the second paragraph pertaining to the justification for using deadly force. (R. C93; R. 633-635, 708) Finally,

although the issues instructions required the State to negate the defense of self-defense beyond a reasonable doubt, these same instructions only referred to Mr. Luga's alleged acts of self-defense and did not mention Kelleher. Despite the fact that one of Mr. Luga's statements indicated Baltier struck the first blow and made the first lunge at Kelleher, none of the issues instructions contained accountability language requiring the State to negate self-defense with reference to Kelleher, as required by the committee note to IPI Criminal 4th # 5.03. (R. C88, C92, C123, C125; R. 705, 707-710; Plaintiff's Exhibit #84) Once again, the issue of accountability was removed from the jury's consideration by these omissions.

A lay jury could not hope to sort out the numerous errors, corrections and contradictions presented in the instructions. This muddled presentation of the elements of the crimes turned on it's head the principle that instructions as a whole can fairly inform the fact finder of the requirements of the State's proof. On the contrary, the boggle of errors made the instructions confusing as a whole and requires that Mr. Luga receive a new trial in which the jury is clearly instructed as to the required proof for finding him guilty of aggravated battery. **People v. Alvine**, 173 Ill.2d 273, 287 (1996)

## 13B. SECOUND GROUND

1. Larry Wechter, defendant's appellate counsel, failed to fulfill his duty of providing effective assistance of counsel when he failed to do any research into the defendant's background before challenging the Courts sentence of 34 years on direct appeal.

In argument II of defendant's direct appeal, Mr. Wechter challenges the Courts abuse of discretion when sentencing defendant to 34 years. One issue that Mr. Wechter uses to challenge this abuse of discretion is that, "Mr. Luga's background did not disclose a history of violent crime." In the sentencing transcripts from Nov. 14th, 2003, Louise Luga, defendant's mother, clearly states that the defendant got into a fight that expelled him from high school (pgs. 33 and 34). Later in the transcripts, Judge Rossetti clearly states the defendants prior starting in juvenile court (pgs 47 and 48), which was the above stated fight. Judge Rossetti then states a battery charge in 1999. These crimes were both violent in nature, yet Mr. Wechter claims that the defendant's history discloses no violent crimes. It makes you question whether or not Mr. Wechter even read the transcripts he was provided before filing this petition.

How could Mr. Wechter have been acting in the defendant's best interest if he wasn't even motivated enough to do a simple background check? It's clear that he wasn't.

13C. THIRD GROUND

1.  Appellant contends that his appellate attorney was ineffective and relies on **Strickland V Washington**, 466 U.S.668.80 L.Ed.2d.674, to illustrate this point. Appellant believes that the main issue that should have been challenged on his direct appeal was not. Appellant used **Brackett V Peters**, 11 F.3d.78, **People V Thomas,** 262 N.E.2d.495, and **People V Mitchell**, 473 N.E.2d.1270 to illustrate why the issue of intent not being proved beyond a reasonable doubt in his case is a valid issue. Appellant shows that contending the verdict of attempt murder was in his best interest and that proves that his attorney was not acting in Appellants best interest.

Appellant relies on **Strickland V Washington,** 466 U.S. 668,80 L.Ed.2d.674 for relief from the violation of his Sixth Amendment right. Appellant contends that his appellant attorney acted without the appellants best interest in mind, only the interest of his own caseload. Appellant sent letters to the Appellant Defender's Office on multiple occasions containing case law that he believed would be beneficial to his appeal challenging his attempt murder verdict, mainly the fact that intent was not proven beyond a reasonable doubt. These letters were forwarded to his court appointed attorney, Larry Wechter. Going by the **Strickland** 2 pronged test, to prove ineffective assistance, the appellant first contends that his attorney acted in a conflicting manner of appellants best interest when he failed to file an appeal challenging the verdict of attempt murder.

Secondly, appellant believes that there was a "reasonable probability" that the outcome of his appeal would have been different had his attorney acted in his best interest by challenging his guilty verdict on appeal.

(C) Ground three _____
    Supporting facts:

~~(lines crossed out)~~

(D) Ground four _____
    Supporting facts:

~~(lines crossed out)~~

2  Have all grounds raised in this petition been presented to the highest court having jurisdiction?
   YES ( )  NO (✓)

3. If you answered "NO" to question (16), state briefly what grounds were not so presented and why not:
Ineffective assistance of appellate counsel wasn't presented due to time restrictions not being met due to lockdown and inability to access law materials.

## PART IV – REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A) At preliminary hearing  Greg Ticsay

(B) At arraignment and plea  Greg Ticsay

(C) At trial  Greg Ticsay

(D) At sentencing  Greg Ticsay

(E) On appeal  Larry Wechter

(F) In any post-conviction proceeding  _____

(G) Other (state):  _____

## PART V – FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES ( )   NO (✓)

Name and location of the court which imposed the sentence: _____

Date and length of sentence to be served in the future _____

WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: August 16th, 2008
(Date)

_____
Signature of attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct.

_Betty Yung_
(Signature of petitioner)
R-25652
(I.D. Number)
P.O. Box 112  Joliet, IL 60434
(Address)

REVISED 01/01/2001

17

IN THE
United States District Court
Northern District of Illinois

Bobby S. Luga R-25652 )
~~Plaintiff~~, Petitioner )
 )
 ) Case No. _____
v. )
 )
Brian McCann, Warden Stateville CC, and Attorney General )
~~Defendant~~ Respondent     of the State of Illinois

## PROOF/CERTIFICATE OF SERVICE

TO: U.S. Dist Court
Northern Dist. of Illinois
219 S. Dearborn St
Chicago, IL 60604

TO: _____

PLEASE TAKE NOTICE that on August 19th, 2008, I have placed the documents listed below in the institutional mail at Stateville Correctional Center, properly addressed to the parties listed above for mailing through the United States Postal Service:

Habeus Corpus Petition (3 copies)

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109, I declare, under penalty of perjury, that I am a named party in the above action, that I have read the above documents, and that the information contained therein is true and correct to the best of my knowledge.

DATE: 8-19-08

/s/ Bobby Luga
NAME: Bobby S. Luga
IDOC#: R-25652
Stateville Correctional Center
P.O. BOX 112
Joliet, IL 60434